J-A28045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: H.L-R, A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: T.L., FOSTER PARENT, | |
| Appellant | No. 100 EDA 2015 |

Appeal from the Orders Entered November 20, 2014 and December 17, 2014, In the Court of Common Pleas of Philadelphia County Juvenile Division at No(s): CP-51-DP-0000572-2012, FID: 51FN-001046-2012

| | |
|---|---|
| IN THE INTEREST OF: H.L-R, A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.L., FOSTER PARENT, | |
| Appellant | No. 102 EDA 2015 |

Appeal from the Orders Entered November 20, 2014 and December 17, 2014, In the Court of Common Pleas of Philadelphia County Juvenile Division at No(s): CP-51-DP-0000573-2012, FID: 51FN-001046-2012

| | |
|---|---|
| IN THE INTEREST OF: H.L-R, A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.L., FOSTER PARENT, | |
| Appellant | No. 104 EDA 2015 |

Appeal from the Orders Entered November 20, 2014 and December 17, 2014, In the Court of Common Pleas of Philadelphia County Juvenile Division at No(s): CP-51-DP-0000599-2012, FID: 51FN-001046-2012

BEFORE:  GANTMAN, P.J., PANELLA, and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 23, 2015**

In these consolidated appeals, Appellant, foster parent T.L. ("T.L."), appeals from three orders entered on November 20, 2014, that removed three children ("the Children"), each of whom have the initials "H.L-R," from her home.  In addition, T.L. appeals from three orders entered on December 17, 2014, that denied her petitions to intervene in these dependency cases.  After careful review, we affirm the December 17, 2014 orders that denied T.L.'s petitions to intervene, and we quash the appeals from the November 20, 2014 orders due to lack of standing.

In April of 2012, the trial court ordered the Department of Human Services ("D.H.S.") to take custody of H.L-R 1, who was born in March of 2011,[1] and twins H.L-R 2 and H.L-R 3, who were born in February of 2012. All of the Children were adjudicated dependent, and they were placed in foster care with T.L.

_____

[1] Sadly, we are constrained to note that on September 8, 2015, this Court was notified that H.L-R 1 had died.

On December 23, 2013, D.H.S. filed petitions to change the Children's permanency goal to adoption and to have the Children's biological parents' parental rights involuntarily terminated. On May 13, 2014, the trial court granted the petitions. The Children remained in foster care with T.L. However, following reports that T.L.'s mother was abusing the Children, the child advocate requested that the trial court remove the Children from T.L.'s home. The trial court scheduled a hearing on the child advocate's motion. T.L. was provided notice of the hearing and her right to be heard on October 31, 2014.

The hearing was held on November 20, 2014. The testimony revealed that there was suspected abuse of the Children by T.L.'s mother, the Children had medical and emotional difficulties for which they were not receiving proper care, and the Children's needs were not met while living in T.L.'s home. T.L. attended the November 20, 2014 hearing, but she did not testify. The trial court concluded that the witnesses' testimony supported the immediate removal of the Children from T.L.'s home.[2] N.T., 11/20/14, at 110-114.

On November 25, 2014, T.L. filed petitions to intervene in the dependency proceedings. In her petitions, T.L. averred that she had a right

---

[2] In addition to the Children, there were two other minors in foster care at T.L.'s home. The record reflects that all five children were removed from the home. N.T., 11/20/14, at 114.

to be heard as a foster parent pursuant to 42 Pa.C.S. § 6336.1(a); alternatively, she claims that she had standing to intervene because she was a preadoptive parent. On December 17, 2014, the trial court held a hearing on T.L.'s petitions, determined that T.L. lacked standing, and denied T.L.'s petitions. N.T., 12/17/14, at 39.

On December 19, 2014, T.L. filed her notices of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On appeal, T.L. raises the following issues for this Court's consideration:

> 1. Did the Trial Court err in denying standing to [T.L.], a prospective adoptive parent, in the proceeding in which her prospective adoptive children were removed from her care?
>
> 2. Did the Trial Court err in denying [T.L.] her 42 Pa.C.S.A. § 6336.1 statutory right to be heard in violation of procedural due process at a dependency hearing?
>
> 3. Did the Trial Court err in finding, against the recommendation of DHS, that it was in the [C]hildren's best interest to be removed from Appellant's home, where they had resided and thrived for the majority of their lives?

T.L.'s Brief at 4.

We begin by setting forth our standard of review. Questions regarding standing to participate in dependency proceedings are questions of law; this Court's scope of review is plenary, and our standard of review is *de novo*. *In re S.H.J.*, 78 A.3d 1158, 1159 (Pa. Super. 2013) (citation omitted).

In *S.H.J.*, this Court explained that party status in dependency proceedings is limited to three classes of persons: (1) the parents of the

- 4 -

juvenile whose dependency is at issue; (2) the legal custodian of the juvenile whose dependency is at issue; or (3) the person whose care and control of the juvenile is in question.[3] *Id*. at 1160-1161 (citing *In the Interest of L.C., II*, 900 A.2d 378, 381 (Pa. Super. 2006)). These three categories logically stem from the fact that after an adjudication of dependency, the trial court has the authority to remove a child from the custody of his or her parents or legal custodian. *Id*. (citing *L.C., II*, 900 A.2d at 381). Because the appellant in *S.H.J.* did not fall into one of the specified categories, this Court affirmed the trial court's denial of standing and reiterated that foster parents and persons acting *in loco parentis* lack standing to intervene in dependency proceedings. *S.H.J.*, at 1161-1163.

Nonetheless, T.L. also argues that she has standing as a prospective adoptive parent pursuant to *In re Griffin*, 690 A.2d 1192 (Pa. Super. 1997). T.L.'s Brief at 10. We disagree. In *Griffin*, the children were removed from a preadoptive foster family. *Id*. at 1199. The *Griffin* Court, under the unique facts of that case, concluded that the preadoptive foster parents, who were originally foster parents, had standing to challenge the children's removal from their home. *Id*. at 1101-1202. However, in the

---

[3] Foster parents do not fall into these three classes. *In re J.S.*, 980 A.2d 117, 122 (Pa. Super. 2009); *see also In re C.R.*, 111 A.3d 179, 185 n.3 (Pa. Super. 2015) (noting that foster parents could not stand in *loco parentis* because their status as foster parents was subordinate to the County Children & Youth Services Agency, which maintained legal custody and was primarily responsible for the child's care and custody).

case at bar, which is a dependency proceeding and not an adoption proceeding,[4] T.L. was and remained a foster parent. There was no adoption petition, adoptive placement agreement, or other indication, aside from her unsupported assertion, that T.L. was a preadoptive parent as contemplated by the holding in **Griffin**.[5] Therein, the trial court specifically recognized the appellants as prospective adoptive parents. **Griffin**, 690 A.2d at 1201-1202. Here, there is nothing in the record that altered T.L.'s status from foster parent to preadoptive parent. T.L.'s alleged intent notwithstanding, T.L. may not simply label herself a preadoptive parent in an effort to achieve standing.[6]

After review, we agree with the trial court that T.L. does not fall into any of the three enumerated categories that would confer standing to intervene. Rather, T.L. was a foster parent who was never granted legal custody of the Children. Therefore, T.L. lacked standing to intervene in the

---

[4] Similar to the facts underlying **S.H.J.**, herein, the proceedings in the trial court were pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6301 *et seq.*, not the Adoption Act, 23 Pa.C.S. §§ 2101 *et seq*.

[5] Counsel for T.L. argued at the December 17, 2014 hearing, that, but for the removal of the Children on November 20, 2014, the paperwork necessary to pursue adoption would have been filed. N.T., 12/17/14, at 11.

[6] We also note that despite **Griffin**, and the unique circumstances presented therein, even if T.L. had established that she was a preadoptive parent, standing is not automatic. **See** 42 Pa.C.S. § 6336.1(a) ("nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.").

proceedings involving the Children, and we discern no error in the trial court's order. *See S.H.J.*, 78 A.3d 1160-1161. Therefore, pursuant to 42 Pa.C.S. § 6336.1, T.L., as a foster parent, had a right only to notice and opportunity to be heard.

In her second issue, T.L. argues that the trial court erred in denying her statutory right to be heard in violation of 42 Pa.C.S. § 6336.1. This claim is belied by the record.

**Notice and hearing**

**(a) General rule.--**The court shall direct the county agency or juvenile probation department to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, preadoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.

42 Pa.C.S. § 6336.1(a).

As we stated above, the record reflects that T.L. was present at the November 20, 2014 hearing, but she elected not to testify. Thus, she obviously was provided notice and the opportunity to be heard pursuant to 42 Pa.C.S. § 6336.1(a). Moreover, when the trial judge convened the December 17, 2014 hearing, he went so far as to open the record in order for T.L. to be heard, and indeed, T.L. then provided testimony. N.T., 12/17/14, at 24-39. Hence, not only was T.L. afforded an opportunity to be

heard, **she was heard**. Accordingly, T.L.'s allegation that she was denied her rights under 42 Pa.C.S. § 6336.1(a) is meritless. Additionally, regardless of T.L.'s testimony, the fact remained that as a foster parent, T.L. lacked standing to intervene in the proceedings. *S.H.J.*, 78 A.3d 1160-1161; 42 Pa.C.S. § 6336.1(a).

Finally, T.L. argues that the trial court erred in removing the Children from her home. However, because we have concluded that T.L. lacks standing in this matter, we are faced with a question of whether T.L. was a proper party to appeal the order removing the Children from her home.

The Pennsylvania Code provides as follows:

**Foster parent appeal of child relocation.**

(a) Foster parents may appeal the relocation of a child from the foster family except under one of the following conditions:

> (1) The child has been with the foster family less than 6 months.
>
> (2) The removal is initiated by the court.
>
> (3) The removal is to return the child to his parents.
>
> (4) The removal is to place the child for adoption.
>
> (5) An investigation of a report of alleged child abuse indicates the need for protective custody removal to protect the child from further serious physical or mental injury, sexual abuse or serious physical neglect as defined in Chapter 3490 (relating to protective services).

55 Pa.Code § 3700.73(a).

While this Court is cognizant that Section 3700.73(a) concerns administrative appeals, it is clear that in cases such as this, where the removal is initiated by the court, the foster parent cannot pursue an administrative appeal. 55 Pa.Code § 3700.73(a)(2). Additionally, T.L. has not identified a basis upon which she was permitted to pursue her appeal of the removal of the Children through the courts. The Pennsylvania Rules of Appellate Procedure set forth who may appeal as follows:

**Any Aggrieved Party May Appeal**

Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom.

Pa.R.A.P. 501.

Here, T.L. cannot be considered an aggrieved party because, as we explained in our discussion of **S.H.J.**, she is not a party. Rather, in dependency proceedings, a Child Advocate is designated as the party to protect the child's best interests before the court. 42 Pa.C.S. § 6337 and **see generally In re L.J.**, 691 A.2d 520, 527 (Pa. Super. 1997) (discussing standing to appeal). Accordingly, we conclude that T.L.'s appeals from the November 20, 2014 order removing the Children from her home were improper as she lacked standing.

For the reasons set forth above, we discern no abuse of discretion or error of law in the trial court's orders entered on December 17, 2014. Moreover, because we conclude that T.L. was not a party to the proceedings in the trial court, the appeals from the orders entered on November 20,

2014, are quashed. ***See C.R.***, at 180 (quashing foster mother's appeal for lack of standing).

December 17, 2014 orders affirmed. Appeals from the November 20, 2014 orders quashed. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/23/2015